Michael F. Thomson (Utah # 9707)
Alexander Baker (Utah # 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
thomsonm@gtlaw.com
bakera@gtlaw.com

*Attorneys for Court-Appointed Receiver Michael F. Thomson*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| MICHAEL F. THOMSON, in his capacity as court-appointed receiver for Traffic Monsoon, LLC, and Charles D. Scoville,<br><br>     Plaintiff,<br><br>vs.<br><br>IMTIAZ ASLAM, PIOTR CHAJKOWSKI, VINCENT BOUTIN, MAURIZIO LONGO, ERNEST GANZ, DAVID BARKER, MOHAMMED YASIN, ADIL KHAN, JAVEDIQBAL NAEEM, LIMITED BY INVITATION, and SHARON JAMES,<br><br>     Defendants. | **MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>**(IMTIAZ ASLAM)**<br><br>2:19-cv-00275-JNP-CMR<br><br>The Honorable Jill N. Parrish |

Plaintiff Michael F. Thomson,[1] solely in his capacity as Court-appointed Receiver (the

"Receiver") for Traffic Monsoon, LLC ("Traffic Monsoon"), and all assets of Charles D. Scoville

obtained directly or indirectly from Traffic Monsoon in the case styled as *Securities and Exchange*

*Commission v. Traffic Monsoon, LLC, et al.*, Case No. 2:16-cv-00832-JNP (D. Utah) (Parrish, J.)

---

[1] Peggy Hunt was the initial Receiver appointed in the SEC Case on July 27, 2016. On April 19, 2023, Michael F. Thomson was appointed as successor Receiver in the SEC Case. The defined term "Receiver" is used herein to reference the applicable court-appointed Receiver—either Ms. Hunt or Mr. Thomson—who was in place during the relevant time period.

(the "SEC Case"), by and through counsel, respectfully moves this Court for entry of default judgment against defendant Imtiaz Aslam ("Aslam"). A proposed default judgment is attached hereto as **Exhibit A**. In further support hereof, the Receiver states as follows:

## I.    RELIEF SOUGHT AND GROUNDS FOR RELIEF

The Receiver seeks the entry of default judgment against Aslam in the amount of $6,855,073.05, plus additional prejudgment interest at the rate of $1,184.01 per diem beginning on August 23, 2023, through the date the default judgment is entered (the "Judgment Amount"), plus postjudgment interest as set forth in 28 U.S.C. § 1961. Grounds for this Motion are the provisions of the Fed. R. Civ. Pr. 55(b)(2), DUCivR 55-1(b)(2) and (3), and the Certificate of Default (Imtiaz Aslam) [Docket No. 135] ("Default Certificate") entered against Aslam, a true and correct copy of which is attached hereto as **Exhibit B**. Additionally, the Receiver seeks entry of default judgment as to Aslam only pursuant to Fed. R. Civ. P. 54(b).

This Motion is supported by the *Declaration of D. Ray Strong* (the "Strong Declaration") and the *Declaration of Alexander Baker Regarding Military Service Status (Imtiaz Aslam)* (the "Military Service Declaration") filed concurrently herewith.

## II.    BACKGROUND

1.    The Receiver brought this action to recover funds fraudulently transferred to the above-named defendants, including Aslam, from Traffic Monsoon while it operated with the characteristics of a Ponzi scheme prior to the Receiver's appointment. While the Receiver's allegations are set forth in detail in the Class Action Complaint [Docket No. 2] (the "Complaint"), the Receiver offers the following summary in support of this Motion.

A.    **The SEC Case and the Receivership Estate**

2.    On September 29, 2014, Scoville registered Traffic Monsoon with the State of Utah as a limited liability company. At all times prior to the commencement of the SEC Action, Traffic Monsoon was operated by Scoville from his basement apartment/office located in Murray, Utah. *Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1209 (10th Cir. 2019).

3.    On July 26, 2016, the United States Securities and Exchange Commission (the "SEC") commenced the SEC Case by filing a Complaint alleging that Traffic Monsoon and Scoville (the "SEC Case Defendants") were violating various securities laws and operating an internet Ponzi scheme through the sale of "AdPacks." SEC Case Docket No. 2.

4.    On July 27, 2016, the Court entered an Order Appointing Receiver [Docket No. 11], appointing the Receiver to serve as the receiver of the Receivership Estate. Subsequently the Court issued its Amended Order Appointing Receiver [SEC Case Docket No. 81], later revised in the Second Amended Order Appointing Receiver [SEC Case Docket No. 120] (the "Receivership Order"), maintaining the Receiver's appointment.

5.    On March 30, 2017, this Court issued its *Memorandum Decision and Order Granting a Preliminary Injunction and Denying the Defendants' Motion to Set Aside the Receivership* [SEC Case Docket No. 79] (the "Memorandum Decision"), finding that the SEC had shown that it could likely prove that Traffic Monsoon operated as a Ponzi scheme, paying investors returns on their AdPack purchases with money from other investors' AdPack purchases. Memorandum Decision pp. 34-39.

6.    On appeal, the Tenth Circuit affirmed the Court's Memorandum Decision and found, among other things, "that the SEC has asserted sufficient evidence to make it likely that the SEC will be able to prove that Defendants were operating a fraudulent scheme—a Ponzi scheme—

selling Adpacks and that scheme violated the antifraud statutes invoked in this litigation." *Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1209 (10th Cir. 2019).

7.    Scoville subsequently filed a petition for writ of certiorari with the U.S. Supreme Court, which was denied on November 4, 2019. SEC Case Docket No. 214.

    B.    **The Present Case and Aslam's Default**

8.    On March 21, 2019, the Court entered its Order in the SEC Case authorizing the Receiver to commence legal proceedings related to claims held by the Receivership Estate. SEC Case Docket No. 181. Accordingly, on April 22, 2019, the Receiver commenced the above-captioned case by filing the Complaint.

9.    As set forth more fully in the Complaint, which the Receiver incorporates herein by reference, those who profited from the Traffic Monsoon Ponzi scheme, the "Net Winners," are not entitled to keep their ill-gotten profits, and the Receiver brought the present case to recover the monies Traffic Monsoon transferred to the Net Winners in excess of the amount of monies that the Net Winners paid to Traffic Monsoon.

10.    Aslam joined Traffic Monsoon on or about April 10, 2014, and remained active until approximately July 26, 2016. During that time, Aslam received net winnings of approximately $5,084,270.82 (the "Net Winnings") from Traffic Monsoon calculated as follows:

| | |
|---|---|
| Distributions to Aslam | $5,095,096.69 |
| Contributions from Aslam | ($10,825.87) |
| **Net Winnings** | **$5,084,270.82** |

Strong Declaration, ¶ 13.

4

11.     Multiple summonses were initially issued to Aslam over the course of this lawsuit, including summonses sent on April 23, 2019, August 26, 2019, and December 7, 2020 [Docket Nos. 5, 51, and 64].

12.     After no response from Defendant Aslam to these summonses, the Receiver filed a Motion to Serve Defendant Aslam by Alternative Service (the "Alternative Service Motion"), seeking to effectuate service via mail, email, and WhatsApp [Docket No. 120].

13.     The Court granted the Alternative Service Motion in part, allowing service via mail and email, and indicated that service via WhatsApp would be reconsidered upon a motion showing that service via mail and email were ineffective [Docket No. 125].

14.     An additional summons was issued on November 22, 2022 [Docket No. 127].

15.     The Receiver attempted service on Aslam via mail and email, to no success. Thereafter, the Receiver filed a Motion for Alternative Service Via WhatsApp [Docket No. 128].

16.     The Court granted the Receiver's Motion for Alternative Service Via WhatsApp on May 17, 2023 [Docket No. 130].

17.     A summons was issued to Defendant Aslam via WhatsApp on May 31, 2023 [Docket No. 132].

18.     The summons states, in relevant part:

> Within 21 days after service of this summons on you (not counting the day you received it) . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: GREENBERG TRAURIG, LLC c/o Alex Baker 222 S Main Street, Suite 1730 Salt Lake City, UT 84101 United States[.] If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

19.     Pursuant to Fed. R. Civ. P. 4(l)(2), the Receiver filed the Affidavit of Service on Aslam on July 20, 2023 [Docket No. 133].

20.     As set forth in the Affidavit of Service on Aslam, on June 1, 2023, Aslam was served via WhatsApp pursuant to the Court's May 17, 2023 Order. *See* Affidavit of Service on Aslam [Docket No. 133], p. 2.

21.     On July 21, 2023, when no answer from Aslam had been filed on the docket in this case, the Receiver filed his *Motion for Entry of Default (Imtiaz Aslam)* [Docket No. 134] (the "Motion for Entry of Default") and served the Motion for Entry of Default on Aslam [Docket No. 136].

22.     On July 25, 2023, the Default Certificate was entered against Aslam [Docket No. 135].

## III.    MEMORANDUM IN SUPPORT

Fed. R. Civ. P. 55 authorizes the Court to enter a default judgment under a two-step process: (1) the clerk of the court "must enter the party's default" under Rule 55(a) and (2) a party may move the court for entry of a default judgment under Rule 55(b). *Bodyguard Productions v. Does 1 - 25*, 2018 U.S. Dist. LEXIS 192234, at *2 (D. Utah Nov. 8, 2018). In this case, the Clerk has already entered the Default Certificate against Aslam, so only the second step remains. *See* Exhibit B. The Receiver now moves the Court for entry of default judgment against Aslam under Fed. R. Civ. P. 55(b)(2), and requests that such default judgment be a final judgment under Fed. R. Civ. P. 54(b).

### A.     The Court Should Enter Default Judgment Under Fed. R. Civ. P. 55(b)(2)

Entry of default judgment against Aslam is appropriate in this case. "[T]he entry of a default judgment is committed to the sound discretion of the district court," and a default judgment

"must be supported by a sufficient basis in the pleadings." *Tripodi v. Welch*, 810 F.3d 761, 764–65 (10th Cir. 2016). After the clerk has entered the defendants' default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). In doing so, the Court must first assure itself of personal and subject matter jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). It must then determine whether the plaintiff's complaint contains sufficient factual matter, accepted as true, to state a claim for relief. *Stampin' Up!, Inc. v. Hurst*, 2018 U.S. Dist. LEXIS 74355, at *8– 9 (D. Utah May 1, 2018). The Court may also look to declarations and other exhibits when evaluating a plaintiff's claims. *See*, *e.g.*, *Major Bob Music v. S. Shore Sports Bar & Grill, Inc.*, 2010 U.S. Dist. LEXIS 66406, at *1 (D. Utah June 30, 2010). In summary, the Court must first find that it has jurisdiction over Aslam and the Receiver's claims against him, and then determine, based on the pleadings, whether the Receiver has properly stated and substantiated a claim upon which relief can be granted.

### 1.    Jurisdiction Is Proper

The Court has personal jurisdiction over Aslam. A federal court may exercise personal jurisdiction over an out-of-state defendant when "(1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Because Utah's long-arm statute, U.C.A. § 78B-3-201 and 205, confers jurisdiction to the fullest extent permitted under the due process clause of the Fourteenth Amendment to the United States Constitution, the

two-step analysis "collapses here into a single due-process inquiry." *Id*. Due process requires that a defendant have minimum contacts with Utah such that the defendant should reasonably anticipate being haled into court in Utah. *Id*. Further, the defendant must have "purposefully directed its activities at residents of" Utah and "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins. Co. v. Cont'l Motors, Inc*., 877 F.3d 895, 904 (10th Cir. 2017). In the case of internet contacts, the Court may properly exercise personal jurisdiction over a defendant whose purposeful interactions with the website of a Utah-based company give rise to a plaintiff's claims. *Kindig It Design, Inc. v. Creative Controls, Inc*., 157 F. Supp. 3d 1167, 1179–80 (D. Utah 2016). This includes defendants located outside the United States. In *Bell v. Brownie*, 2016 U.S. Dist. LEXIS 13622, at *10–15 (W.D.N.C. Feb. 4, 2016), the court held that it had personal jurisdiction over a defendant who was a citizen of the United Kingdom and New Zealand and lived in Malaysia, based on the defendant's purposeful interactions, from Malaysia, with the website of a North Carolina-based company. In the present case, Aslam, via the Traffic Monsoon website, repeatedly directed and received fraudulent transfers from Traffic Monsoon, a Utah limited liability company operated from Utah during all relevant times. Complaint ¶¶ 24, 36, 48, 87; Memorandum Decision, p. 2; *Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1209 (10th Cir. 2019). Aslam thus transacted business in Utah and caused injury in Utah to Traffic Monsoon, establishing sufficient contacts with Utah such that he should reasonably anticipate being haled into court in Utah, and these contacts form the basis of the Receiver's claims against him. Accordingly, the exercise of personal jurisdiction over Aslam is proper.

The Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332 because the Receiver is domiciled in Utah, the Receiver knows Aslam is not and believes Aslam is domiciled in Dubai, and the amount in controversy exceeds $75,000. Additionally, this Court has

supplemental subject matter jurisdiction under 28 U.S.C. § 1367 because this action is directly related to the claims in the SEC Action, concerns property within this Court's exclusive control, and was brought by the Receiver in furtherance of her duties as directed by this Court. *Klein v. Cornelius*, 786 F.3d 1310, 1315 (10th Cir. 2015). This action is also within the ancillary jurisdiction of this Court because this action concerns the property and assets of the Receivership Estate, which are under this Court's exclusive jurisdiction. *Id*.; s*ee also Oils, Inc., v. Blankenship*, 145 F.2d 354, 356 (10th Cir. 1945).

### 2. The Complaint Contains Sufficient Factual Matter to State a Claim for Relief against Aslam

It is appropriate to enter judgment against Aslam based on the Complaint. "The decision to grant default judgment depends on the sufficiency of the pleading, not the merits of the claim." *Bodyguard Productions v. Does 1 - 25*, 2018 U.S. Dist. LEXIS 192234, at *7 (D. Utah Nov. 8, 2018). By failing to appear, Aslam has admitted the Complaint's well-pleaded facts and forfeited his ability to contest those facts. *Id*. (citing *Tripodi*, 810 F.3d 761, at 764). Specifically, the Complaint pleads that:

- Traffic Monsoon operated as a Ponzi scheme. Complaint ¶ 54-84.

- Aslam received the Net Winnings from Traffic Monsoon. Complaint ¶ 85; Strong Declaration ¶ 13.

- The Net Winnings were transferred with actual intent to hinder, delay, or defraud creditors of Traffic Monsoon. Accordingly, the transfer of the Net Winnings is voidable under U.C.A. § 25-6-202(1)(a), the Net Winnings are recoverable from Aslam under U.C.A. § 25-6-303, and judgment may be entered against Aslam for the Net Winnings under U.C.A. § 25-6-304(2) & (3). Complaint ¶¶ 96-102.

9

- The Net Winnings were transferred without receiving a reasonably equivalent value while Traffic Monsoon was insolvent. Accordingly, the transfer of the Net Winnings is voidable under U.C.A. § 25-6-202(1)(b) and -203(1), the Net Winnings are recoverable from Aslam under U.C.A. § 25-6-303, and judgment may be entered against Aslam for the Net Winnings under U.C.A. § 25-6-304(2) & (3). Complaint ¶¶ 103-108.

- The transfer of the Net Winnings constitutes a common law fraudulent transfer. Accordingly, judgment may be entered avoiding the transfer of the Net Winnings and recovering the Net Winnings from Aslam. Complaint ¶¶ 109-16.

- Because of the transfer of the Net Winnings, the Receiver is entitled to imposition of a constructive trust with respect to the Net Winnings. Complaint ¶¶ 117-21.

Thus, the Complaint pleads sufficient facts to justify entry of default judgment against Aslam.

### 3.    The Servicemembers Civil Relief Act Does Not Bar Default Judgment

Under DUCivR 55(b)(3), all motions for default judgment must be accompanied by a declaration regarding whether the defendant is in military service. Aslam is not a person in the military services within the meaning of the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901–4043. *See* Military Service Declaration. Accordingly, default judgment may be entered against him.

### 4.    The Judgment Amount Is Proper

The Receiver seeks to recover the Judgment Amount from Aslam. The Judgment Amount is comprised of (i) the value of the Net Winnings, $5,084,270.82, (ii) plus prejudgment interest calculated as of August 22, 2023, in the amount of $1,770,802.23, (iii) plus additional prejudgment interest at the rate of $1,184.01 per diem beginning on August 23, 2023 through the date the default judgment is entered. The Receiver also seeks postjudgment interest on the Judgment Amount as

set forth in 28 U.S.C. § 1961. The Receiver submits that the Judgment Amount and the imposition of postjudgment interest on the Judgment Amount as set forth in 28 U.S.C. § 1961 are proper under applicable law.

U.C.A. § 25-6-303 allows the Receiver to recover the Net Winnings from Aslam. Aslam received $5,084,270.82 in Net Winnings from Traffic Monsoon. Strong Declaration ¶ 13. Accordingly, the Receiver may recover that amount from Aslam. Additionally, the Receiver may recover prejudgment interest. As the Utah Supreme Court has found, "[p]rejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 272 (Utah 2009). While U.C.A. § 25-6- 303 does not specifically name prejudgment interest as a remedy, it does authorize remedies to include, "subject to applicable principles of equity . . . , any other relief the circumstances may require." Other courts in this district have found that this section authorizes the inclusion of prejudgment interest in judgments to recover Ponzi scheme proceeds. For instance, in *Miller v. Kelley*, 2014 U.S. Dist. LEXIS 153319, at *22 (D. Utah Oct. 27, 2014), the Court found that the recipient of Ponzi scheme proceeds had to return his net profits as well as "prejudgment interest on payments received in excess of his investment from the date of those payments' receipt." Similarly, in *Klein v. Widmark*, 2016 U.S. Dist. LEXIS 27185, at *3–5 (D. Utah Mar. 2, 2016), the Court held that "[u]nder principles of fairness and equity, prejudgment interest is proper in a fraudulent transfer case involving a Ponzi scheme," and, following *Miller v. Kelly*, awarded prejudgment interest from the date the defendants received payment from the Ponzi scheme in excess of their "investment." Because "[n]either Utah nor federal law specifies the appropriate rate of prejudgment interest for a fraudulent transfer case," the Court in *Klein v. Widmark* awarded prejudgment interest at a rate meant to reflect "what

plaintiff could have received on investments during" the time the defendant held the fraudulently transferred funds, specifically, for "the amount due [from defendant] in any given month," interest at "the prime rate in effect on the first day of that month." *Id*. at *7.

The Receiver believes the same rationale should apply in the present case. Aslam made contributions to Traffic Monsoon totaling $10,825.87 from October 2014 to May 2016, and began receiving distributions from Traffic Monsoon in October 2014. Strong Declaration ¶ 14. On October 30, 2014, Aslam's total distributions from Traffic Monsoon exceeded contributions for the first time. From that date until August 22, 2023, Aslam has held net winnings from Traffic Monsoon (the "Net Winnings Period"). *Id*. at ¶ 15. To determine the amount of prejudgment interest on the Net Winnings, the Receiver's accountants, Berkeley Research Group ("BRG"), first calculated the daily balance of Net Winnings held by Aslam during the Net Winnings Period (the "Daily Net Winnings Balance"). BRG then applied the Prime Rate[2] in effect to each Daily Net Winnings Balance for the number of days until the daily balance subsequently adjusted with new activity. BRG has calculated prejudgment interest through August 22, 2023.[3] A schedule detailing these calculations (the "Prejudgment Interest Schedule") is attached to the Strong Declaration as Exhibit 4. *Id*. at ¶ 16.

As shown in the Prejudgment Interest Schedule, prejudgment interest on the Net Winnings during the Net Winnings Period totals $1,770,802.23. *Id*. at ¶ 17. Thus, the combined total of Net Winnings and calculated prejudgment interest as of August 22, 2023 is $6,855,073.05. *Id*. at ¶ 18. In addition, prejudgment interest will continue to accrue until the date the Court enters the default judgment. Based on the current prime rate of 8.5%, BRG has calculated a per diem prejudgment

---

[2] See Exhibit 3 to the Strong Declaration for a schedule of the Prime Rates obtained from the Federal Reserve.
[3] Interest was calculated on a simple interest basis and does not reflect any interest compounding. Strong Declaration ¶ 16 n.4.

interest rate of $1,184.01 as of August 22, 2023. This per diem rate can be added to the combined total of $6,855,073.05 beginning on August 23, 2023, through the date a judgment is entered. *Id.* at ¶ 19. Accordingly, the Judgment Amount of (i) the value of the Net Winnings, $5,084,270.82, (ii) plus prejudgment interest calculated as of August 22, 2023, in the amount of $1,770,802.23, (iii) plus additional prejudgment interest at the rate of $1,184.01 per diem beginning on August 23, 2023, through the date the default judgment is entered, is proper, and the imposition of postjudgment interest as set forth in 28 U.S.C. § 1961 is also proper.

**B.   The Court Should Enter Default Judgment Under Fed. R. Civ. P. 54(b)**

In this Motion, the Receiver only seeks entry of default judgment against Aslam. Pursuant to Fed. R. Civ. P. 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." In determining whether to enter judgment pursuant to Rule 54(b), "the district court should act as a 'dispatcher' weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1264 (10th Cir. 2005).

This is a proposed class action with 11 named defendants, including Aslam. The Receiver has served all named defendants. None of the named defendants who have been served have appeared in this case. However, because the named defendants live in several different countries, the cost and effort involved in enforcing those judgments will vary, and the Receiver seeks separate judgments against them at separate times to enable him to enforce those judgments in the most strategic and cost-effective way possible. The Receiver does not anticipate any appeals from the named defendants because they have not appeared in the first instance, so there is little chance of piecemeal appeals or resulting inequities.

## IV.    CONCLUSION

For the reasons set forth herein, the Receiver requests that the Court enter the proposed default judgment against Aslam attached hereto as **<u>Exhibit A</u>**.


Dated August 28, 2023

**GREENBERG TRAURIG, LLP**

<u>*/s/ Alexander Baker*</u>

Michael F. Thomson
Alexander Baker
*Attorneys for Receiver Michael F. Thomson*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing **MOTION TO FOR ENTRY OF DEFAULT JUDGMENT (IMTIAZ ASLAM)** was filed with the Court on this 28th day of August, 2023, and served on all parties entitled to electronic service.

I **ALSO CERTIFY** that on this 28th day of August, 2023, a true and correct copy of the foregoing was served via U.S. Mail, prepaid, via email, and via WhatsApp as follows:

Imtiaz Aslam
21 Emirates Hills
Dubai, United Arab Emirates

Emails: imyaslam@yahoo.co.uk
        imyaslam@gmail.com

WhatsApp: 44 7535 178186

*/s/Lindsey A. Wharton*

15

# Exhibit A

*Prepared and submitted by:*

Michael F. Thomson (Utah # 9707)
Alexander Baker (Utah # 17163)
**GREENBERG TRAURIG, LLP**
222 South Main Street, suite 1730
Salt Lake City, UT 84101
Telephone: (801) 478-6900
thomsonm@gtlaw.com
bakera@gtlaw.com

*Attorneys for Court-Appointed Receiver Michael F. Thomson*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL F. THOMSON, in his capacity as court-appointed receiver for Traffic Monsoon, LLC, and Charles D. Scoville,<br><br>       Plaintiff,<br><br>vs.<br><br>IMTIAZ ASLAM, PIOTR CHAJKOWSKI, VINCENT BOUTIN, MAURIZIO LONGO, ERNEST GANZ, DAVID BARKER, MOHAMMED YASIN, ADIL KHAN, JAVEDIQBAL NAEEM, LIMITED BY INVITATION, and SHARON JAMES,<br><br>       Defendants. | **[PROPOSED] DEFAULT JUDGMENT AGAINST IMTIAZ ASLAM**<br><br>2:19-cv-00275-JNP-CMR<br><br>The Honorable Jill N. Parrish |

The Matter before the Court is the Motion for Entry of Default Judgment (Imtiaz Aslam) [Docket No. ____] (the "Motion") filed by plaintiff Michael Thomson, in his capacity as Court-appointed Receiver (the "Receiver") for Traffic Monsoon, LLC ("Traffic Monsoon"), and all assets of Charles D. Scoville obtained directly or indirectly from Traffic Monsoon (the "Receivership Estate") in the case styled as *Securities and Exchange Commission v. Traffic*

1

*Monsoon, LLC, et al.*, Case No. 2:16-cv-00832-JNP (D. Utah) (Parrish, J.). In the Motion, the Receiver seeks entry of default judgment against defendant Imtiaz Aslam ("Aslam") for failure to appear, plead, or file an answer in this action. In support of the Motion, the Receiver filed the Declaration of D. Ray Strong in Support of Motion for Entry of Default Judgment (Imtiaz Aslam) [Docket No. ____] (the "Strong Declaration") and the Declaration of Alexander Baker Regarding Military Service Status (Imtiaz Aslam) [Docket No. ____]. The Court has reviewed the Motion, the Strong Declaration, the Military Declaration, and the Certificate of Default (Imtiaz Aslam) [Docket No. 135] ("Default Certificate"). Based thereon, and for good cause appearing, the Court makes the following findings of fact:

## FINDINGS OF FACT

1.      Between about April 10, 2014, and July 26, 2016, Aslam received "Net Winnings" of $5,084,270.82 from Traffic Monsoon.

2.      After several attempts and motions for alternative service, Aslam was served on June 1, 2023 via WhatsApp.

3.      Aslam has failed to appear, plead, or file an answer in this action.

4.      The time allowed by law for Aslam to plead or answer has expired.

It appearing that the Court has personal jurisdiction over Aslam, subject matter jurisdiction over the Receiver's claims, and there being no just reason for delay:

## IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      The transfer of the Net Winnings from Traffic Monsoon to Aslam is VOID under U.C.A. § 25-6-202(1)(a), -202(1)(b), and -203(1), and under common law;

2.      Judgment is ENTERED in favor of the Receiver and against Aslam in the amount of $_____, comprised of (i) the value of the Net Winnings, $5,084,270.82, (ii) plus

prejudgment interest calculated as of August 22, 2023, in the amount of $1,770,802.23, (iii) plus additional prejudgment interest at the rate of $1,184.01 per diem beginning on August 23, 2023 through the date hereof, in the amount of $_____ (collectively, the "Judgment Amount"). The Receiver is entitled to collect postjudgment interest on the Judgment Amount as set forth in 28 U.S.C. § 1961 from the date hereof until the date Aslam pays the Judgment Amount and any outstanding postjudgment interest in full.

3.      Pursuant to U.C.A. § 25-6-303(1)(c)(i), Aslam is ENJOINED from disposing of or otherwise dissipating the Net Winnings or any property until he pays to the Receiver the Judgment Amount and any outstanding postjudgment interest in full.

4.      The Receiver is entitled to title, possession, use, and enjoyment of the Net Winnings for the benefit of the Receivership Estate, and a constructive trust is hereby IMPOSED on the Net Winnings.

5.      There being no just reason for delay, pursuant to Fed. R. Civ. P. 54(b), the Clerk is ordered to enter this judgment as a final judgment forthwith and without further notice.


DATED this ___ day of _____, 2023


                            **BY THE COURT:**

                            By: _____

                                The Honorable Jill N. Parrish
                                United States District Court Judge

# Exhibit B

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL F. THOMSON, in his capacity as court-appointed receiver for Traffic Monsoon, LLC, and Charles D. Scoville, | **CERTIFICATE OF DEFAULT (IMTIAZ ASLAM)** |
| Plaintiff, | 2:19-cv-00275-JNP-CMR |
| vs. | Honorable Jill N. Parrish Magistrate Judge Cecilia M. Romero |
| IMTIAZ ASLAM, PIOTR CHAJKOWSKI, VINCENT BOUTIN, MAURIZIO LONGO, ERNEST GANZ, DAVID BARKER, MOHAMMED YASIN, ADIL KHAN, JAVEDIQBAL NAEEM, LIMITED BY INVITATION, and SHARON JAMES, | |
| Defendants. | |

Under Fed. R. Civ. P. 55(a) and DUCivR 55-1(a), the Clerk of the Court hereby finds that (1) Defendant Imtiaz Aslam ("Aslam") was properly served with process in this action; (2) Aslam has failed to appear, plead, or file an answer in this action; and (3) the time allowed by law for Aslam to plead or answer has expired. Accordingly, the default of Aslam is hereby entered according to law.

Dated: 25th day of July, 2023.

GARY P. SERDAR, CLERK OF COURT: